**FILED**

**MARCH 13, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JEANNE FEDOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. |
| | ) |
| | ) |
| METROPOLITAN LIFE INSURANCE | ) |
| COMPANY and THE HOME DEPOT | ) |
| LONG TERM DISABILITY PLAN | ) |
| Defendant. | ) |

**08 C 50039**

**JUDGE KAPALA**
**MAGISTRATE JUDGE MAHONEY**

## COMPLAINT

Plaintiff, JEANNE FEDOR, by and through her attorneys, DAVID A. BRYANT and

DALEY, DE BOFSKY & BRYANT, and complaining against the defendants, states:

### Jurisdiction and Venue

1.      Jurisdiction of the court is based upon the Employee Retirement Income Security Act

of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the

district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an

employee welfare benefit plan which, in this case, consists of a group long term disability insurance

plan underwritten by Metropolitan Life Insurance Company, for the benefit of employees of The

Home Depot.  In addition, this action may be brought before this court pursuant to 28 U.S.C. § 1331,

which gives the district court jurisdiction over actions that arise under the laws of the United States.

2.      The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or

internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

3.      Venue is proper in the Northern District of Illinois.  29 U.S.C. § 1132(e)(2), 28

U.S.C. § 1391.

### Nature of Action

4.      This is a claim seeking an award to plaintiff of disability benefits pursuant to the policy of insurance, Policy #90280 underwritten by Metropolitan Life Insurance Company to provide long term disability insurance benefits to employees of The Home Depot. (a true and correct copy of the summary plan description is attached hereto and by that reference incorporated herein as Exhibit "A"). This action, seeking recovery of benefits, is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1132(a)(1)(B)).

*The Parties*

5.      Jeanne Fedor ("Ms. Fedor") at all times relevant was a resident of Algonquin, Illinois, and the events, transactions, and occurrences relevant to Ms. Fedor's claim of disability took place within the Northern District of Illinois.  Ms. Fedor was born on July 13, 1948.

6.      Metropolitan Life Insurance Company ("MetLife") is an insurer of short term and long term disability benefits. At all times relevant hereto, MetLife was doing business throughout the United States and within the Northern District of Illinois.

7.      At all times relevant hereto, the Home Depot LTD plan ("Plan") constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Ms. Fedor received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7).  This claim relates to benefits under the foregoing Plan.

*Statement of Facts*

8.      Ms. Fedor was employed as a décor sales associate by The Home Depot, in Algonquin, Illinois.

9.      Ms. Fedor's last worked The Home Depot on May 18, 2003 when she injured her back lifting a rug.  As a result of this accident, Ms. Fedor suffered from back and leg pain caused by lumbar radiculopathy, degenerative disc disease at L3 through S1, herniated discs at L3-L4 and L4-L5 levels, and left sacroiliac strain with pseudo-sciatica.

10.     Unable to continue working in any occupation, Ms. Fedor applied for long term disability benefits through MetLife on January 8, 2004.

11.  The Plan defines disability as:

Disability means that, due to an injury or sickness, you 1) require the regular care of a doctor, and 2) are unable to perform each of the material duties of your regular job or any gainful occupation for which you are reasonably qualified, taking into account your education, training and experience.

In addition, to qualify for long-term disability benefits:

- You must be unable to work after the initial 26-week period of disability
- You must continue to be under the care of a qualified doctor (qualified doctors include legally licensed physicians and practitioners who are not related to you and who are performing services within the scope of their licenses)
- You must not be able to engage in any type of work or service for pay
- MetLife must receive certification with accompanying medical documentation of a disability from your attending doctor before benefits are considered for payment

The maximum period of disability that the Plan will consider for disabilities due to mental/nervous disorders; chronic fatigue syndrome and related disorders; alcohol, drug or substance abuse or dependency; and soft tissue disorders will be 24 months from the date the disability starts.  The 24 months maximum period of disability includes the six months waiting period and 18 months of benefits.

The period of disability is **not limited to 24 months** for a disability resulting from schizophrenia, bipolar disorder, dementia, organic brain disease, seropositive arthritis, spinal tumors, malignancy, vascular malformations, **radiculopathies,** myelopathies, traumatic spinal cord necrosis, or muscolopathies.  Mental/nervous disorder means a mental, nervous, or emotional disorder or disease of any type.  Soft tissue disorders are conditions which include disorders of the spine or limbs and their surrounding muscles, tendons, ligaments, and other soft tissue (included are sprains and strains of joints and adjacent muscles).

- 3 -

(Exhibit A – Summary Plan Description, pg. 207).

12.    Ms. Fedor supported her claim for benefits with numerous medical records, reports and evaluations.    After reviewing this documentation, on January 21, 2004, MetLife approved Ms. Fedor's claim for disability retroactive to May 19, 2003.

13.    Ms. Fedor received uninterrupted disability payments in the amount of $534.10 two times per month from November 17, 2003 through June 30, 2006.

14.    On May 23, 2006, the Social Security Administration issued a determination that Ms. Fedor because of her numerous back impairments, including radiculopathy, that Ms. Fedor was disabled as of May 19, 2005, thus signifying her inability to engage in "any substantial gainful activity."    (Definition of "disabled" under Social Security Act)(a true and correct copy of the Social Security decision is attached hereto and by reference incorporated herein as Exhibit "B").

15.    Nonetheless, without any change in her diagnosis or condition, MetLife terminated Ms. Fedor's benefits starting June 30, 2006, claiming that her impairments stemmed from neuromusculosketal and soft tissue disorders and, therefore, the maximum amount of benefits that she could receive was 24 months.

16.    After MetLife ceased paying benefits, Ms. Fedor submitted an appeal on June 30, 2006 in accordance with 29 U.S.C. § 1133.  On July 26, 2006, Ms. Fedor provided MetLife with updated medical evidence demonstrating the presence of a radiculopathy.

17.    Notwithstanding the presentation of overwhelming evidence showing Ms. Fedor continued to be disabled under the plan, on August 25, 2006, MetLife unreasonably refused to reconsider its decision.

- 4 -

18.    All avenues of administrative appeal have now been exhausted. Therefore, all efforts at administrative review or appeal have been exhausted and this matter is ripe for judicial review.

19.    The evidence submitted to MetLife entitles Ms. Fedor to payment of long term disability benefits under the terms and conditions of the Plan as she continues to meet the definition of disability under the plan.

20.    The determination by the Plan that Ms. Fedor does not suffer from a radiculopathy is contrary to the medical records and has no rational support in the evidence.

21.    As a direct and proximate result thereof, based on the evidence submitted to MetLife, establishing that Ms. Fedor has met the Plan definition of "disability" continuously since the onset of her disability, and that she continues to meet the definition, Ms. Fedor is entitled to payment of monthly disability insurance payments plus interest on all overdue payments at the rate of 9% in accordance with 215 ILCS 5/357.9 or 357.9a.

WHEREFORE, Plaintiff prays for the following relief:

A.    That the Court enter judgment in Plaintiff's favor and against Defendants and that the Court order Defendants to pay disability income benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled;

B.    That the Court order Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C.    That the Court order Defendants to continue paying Plaintiff benefits until such time as she meets the policy conditions for discontinuance of benefits;

D.    That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. § 1132(g); and

E.    That Plaintiff recover any and all other relief to which she may be entitled, as well as the costs of suit.


Dated: Chicago, Illinois
        March 13, 2008                          Respectfully submitted,


                                                s/ David A. Bryant_____
Daley, DeBofsky & Bryant                        David A. Bryant
55 W. Monroe St., Suite 2440                    Attorney for Plaintiff
Chicago, Illinois 60603                         Jeanne Fedor
(312) 372-5200
(312) 372-2778 (fax)

FILED
MARCH 13, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

08 C 50039



my benefits choices

# 2004 Benefits Summary

- eligibility and enrollment
- life events
- medical
- prescription drugs
- dental
- vision
- spending accounts
- life insurance
- ad&d insurance
- disability insurance
- futurebuilder
- employee stock purchase plan
- time-off benefits
- work/life benefits



EXHIBIT

A

HDP-080

| | |
|---|---|
| **eligibility & enrollment** ........................ 3 | **time-off benefits** ........................... 193 |
| **life events** ........................................ 9 | Vacations |
| **medical** ........................................... 14 | Holidays |
| **prescription drugs** ........................... 71 | Bereavement Pay |
| **vision** ............................................ 76 | Leave of Absence |
| **dental** ............................................ 83 | |
| **spending accounts** ........................... 108 | **work/life benefits** ......................... 195 |
| **life insurance** ................................ 117 | Building Better Health |
| **ad&d insurance** ............................... 123 | Tuition Reimbursement Program |
| **disability insurance** ......................... 127 | Team Depot |
| **futurebuilder** ................................. 128 | Matching Gift Program |
| **employee stock purchase plan** ........ 145 | Associate Programs |
| **general information** ......................... 150 |    CARE – Solutions for Life |
|   Events Affecting Your Coverage |    Adoption Assistance |
|   Leaves of Absence | **supplement** ................................. 200 |
|   COBRA Continuation Coverage | |

## Benefits Choice Center

- Representatives are available Monday – Friday, 9 A.M. – 7 P.M. (Eastern Time). Press *0 to reach a representative.
- Automated phone system is available Monday – Saturday, 24 hours a day, and Sunday after 1 P.M. (Eastern Time).

Use the automated line to:

- Enroll in Medical, Dental, Prescription, Vision, Life, AD&D, and Disability coverage and Spending Accounts
- Check your coverage
- Enroll in FutureBuilder
- Access your FutureBuilder account to check your account balances, make transactions, request forms and documents

**(800) 555-4954**

You can also access benefits information online! See the back cover for more information.

*Your Benefits Resources™* Web site    http://resources.hewitt.com/homedepot

### Important COBRA Information

If you are married, please make sure that your spouse is aware of information in the *General Information* chapter that pertains to COBRA continuation of coverage.

The Company Benefits Plans also provide benefits to the following Home Depot associates (including EXPO, Your "other" Warehouse, Home Depot TLC, Home Depot III, Home Depot Incentives, Home Depot Services, Home Depot Builders Solutions Group, and Home Depot Landscape Supply), who receive different versions of the Benefits Summary: part-time hourly and salaried associates in the U.S. and full-time hourly, part-time hourly, associates in Puerto Rico. The Company Benefits Plans also provide benefits to full-time hourly, part-time hourly, and salaried associates of Maintenance Warehouse, St. Thomas, Arvada Hardwoods, Floors Inc., Floor Works, and Apex Supply, who receive different versions of the Benefits Summary.

**supplement**

# Full-Time Hourly Associate Supplement

## Eligibility and Enrollment

### Who Is Eligible

You are eligible to participate in the Company's health and welfare benefit plans as described in this book if you are classified by the Company as an hourly associate and meet these requirements:

- work at least 30 hours per week on a regular full-time basis; and
- have completed your waiting period as follows:
  - U.S., except Hawaii – 90 days of active service
  - Hawaii – 28 days of active service

### When Coverage Begins

Your coverage begins on the first day after you complete your waiting period, as follows:

- U.S., except Hawaii – on the 91st day
- Hawaii – on the 29th day

| Where You Work | Your Waiting Period | When Coverage Begins |
|---|---|---|
| U.S., except Hawaii | 90 days | on the 91st day |
| Hawaii | 28 days | on the 29th day |

### Exceptions

Coverage may be postponed for all plans, except Medical (including Office Visits and Prescription); as follows:

- You are not actively working on the day your coverage begins. Coverage for you and your eligible family members will be delayed until you return to work and complete your waiting period.

- Your dependent is confined at home, in a hospital, or elsewhere for medical reasons. Coverage for that individual will be delayed until his or her attending doctor provides a final medical release. ("Final medical release" refers to a statement from the attending physician that treatment for the condition has been completed and that the patient may return to normal activities.)

If you are not working due to a work-related injury, coverage for you and your family will not be delayed. Coverage will start the day after you complete your waiting period.

## Enrolling for Coverage

### Enrolling as a New Hire

You will receive benefits enrollment information after you join the Company. **To receive coverage, you must access the *Your Benefits Resources* Web site or call the Benefits Choice Center to enroll BEFORE the end of your waiting period.** If you do not enroll when you are first eligible as a new hire, you will not be able to enroll in Medical, Prescription Drug, Vision, or Dental benefits until the next Annual Enrollment unless you have a qualified status change during the year. You may enroll in Voluntary Term Life, Voluntary Dependent Term Life, Voluntary AD&D, or Short- and Long-Term Disability during any rolling 12-month period.

You may enroll in the Spending Accounts before the end of your waiting period. If you do not enroll when you are first eligible, you may enroll during Annual Enrollment, or when you experience certain qualified status changes.

Note: Some of the Company benefit plans have pre-existing condition limitations.

**200**

supplement

## Enrolling in Benefits as a New Associate

| Benefit Plan | Is Enrollment Necessary? |
|---|---|
| Medical Plan | **U.S.** – Yes<br><br>**Hawaii** – No. Associates only are enrolled automatically in the Hawaii PPO Medical Plan. If you do not want coverage, you must complete an HC-5 form **within 31 days**. You must enroll your dependents. |
| Office Visit Copays | **U.S.** – No. You will be enrolled automatically in the $15/$20 option if you are enrolled in a PPO Medical Plan. If you want to select one of the other Office Visits Options, you must contact the Benefits Choice Center within 31 days of receipt of your confirmation statement. To elect one of the other Office Visits Options, you can enroll online through the *Your Benefits Resources* Web site, or you can call the Benefits Choice Center during your initial enrollment period.<br><br>**HMO participants and Hawaii associates** – No. Office Visits Options are included in your Medical Plan. |
| Prescription Drug Plan | **U.S.** – No. You will be enrolled automatically in the $50 Deductible Prescription Drug Plan if you are enrolled in a PPO Medical Plan. If you want to select one of the other Prescription Drug Plans, you must opt out during your enrollment period. To elect one of the other Prescription Drug Plans, you can enroll online through the *Your Benefits Resources* Web site or you can call the Benefits Choice Center during your initial enrollment period.<br><br>**HMO participants and Hawaii associates** – No. Prescription drug benefits are included in your Medical Plan. |
| Vision Plan | Yes |
| Basic Term Life Insurance | No. Automatic with Medical enrollment. Not available otherwise. This is a Company-paid benefit. |
| Basic Dependent Term Life Insurance | No. Automatic when you enroll dependents in Medical. This is a Company-paid benefit. |
| Dental Plan | Yes |
| Disability Insurance<br>**U.S.** – Short- and/or Long-term<br>**Hawaii** – Supplemental Short-term and Long-term | No. Enrollment is automatic for newly eligible associates during their initial eligibility period. If you do not want disability insurance, you must opt out during your enrollment period. If you opt out of STD/LTD coverage, you must complete and submit a Statement of Health form to later enroll for coverage. |
| Voluntary Term Life Insurance | Yes. If you do not enroll when first eligible, you must complete and submit a Statement of Health form. |
| Voluntary Dependent Term Life Insurance | Yes |
| Basic Accidental Death & Dismemberment (AD&D) Insurance | No. Coverage is automatic. This is a Company-paid benefit. |
| Voluntary AD&D Insurance | Yes |
| Spending Accounts (Health Care and Dependent Day Care) | Yes |

## Employment Status Changes

If you stop working full-time, become a part-time associate, and then again become a full-time associate working at least 30 hours per week on a regular full-time basis, your re-enrollment in the Health and Welfare plans will be handled as follows:

- If you have not completed the waiting period (U.S., except Hawaii – 90 days; Hawaii – 28 days). You must complete your waiting period and enroll within 31 days of eligibility of the date on your *Enrollment Worksheet*. You will receive credit for previous employment. All coverages become effective on the first day after you complete your waiting period (U.S., except Hawaii – on the 91st day; Hawaii – on the 29th day), provided you enroll within 31 days of the date on your *Enrollment Worksheet*.

supplement

- **If you have completed the waiting period, but have completed less than 6 months.** You must enroll in the same level of coverage unless a qualified status change occurred, or unless your original change of employment status occurred more than 31 days since you became a part-time associate.

- **Employed more than 6 months.** If you resume full-time employment within 31 days (and during the same year) of your last full-time status, you must re-enroll in the same level of coverage. If you resume full-time employment after 31 days (or during the next year) of your last full-time status, you may select different levels of coverage. All coverages will be effective the date you return to full-time status, provided you enroll within 31 days of the date on your *Enrollment Worksheet*.

## If You're Rehired

If you stop working for the Company, are rehired, and are actively working at least 30 hours per week on a regular full-time basis, your enrollment in the plans will be handled as follows:

- **Within 31 days.** If you were eligible before termination, and are re-employed within 31 days, you are automatically reinstated in the same coverage unless a qualified status change occurred. In this case, you must re-enroll within 31 days of your rehire. If you were not eligible prior to termination, and are re-employed within 31 days, you must complete the waiting period (U.S., except Hawaii – 90 days; Hawaii – 28 days) and enroll within 31 days of becoming eligible. You will receive credit for previous employment. All coverages become effective on the first day after you complete the waiting period (U.S., except Hawaii – on the 91st day; Hawaii – on the 29th day), provided you enroll within 31 days of the date on your *Enrollment Worksheet*.

- **Between 32 days and 6 months.** If you were eligible prior to termination, and are re-employed between 32 days and 6 months from your termination date, your coverage is effective immediately, and you may choose a different level of coverage. You must enroll within 31 days of your rehire date. If you were not eligible prior to termination, you must complete the waiting period (U.S., except Hawaii – 90 days; Hawaii – 28 days) and enroll within 31 days of becoming eligible. You will receive credit for previous employment. All coverages become effective on the first day after you complete the waiting period (U.S., except Hawaii – on the 91st day; Hawaii – on the 29th day), provided you enroll within 31 days of the date on your *Enrollment Worksheet*.

- **After 6 months.** If you are rehired more than 6 months from the date of your termination, you will be considered a new hire for purposes of coverage under the benefit plans and will have to complete the waiting period (U.S., except Hawaii – 90 days; Hawaii – 28 days) to be eligible for benefits.

In all cases, if you enroll within 31 days of becoming eligible, all coverages are effective on the date you become eligible.

If you leave the Company due to a reduction in force and are rehired within 31 days, the coverage you had before your termination will be reinstated with no lapse. Contact the Benefits Choice Center to verify that your coverage has been reinstated.

### If Both You and Your Spouse Work for the Company

If you and your spouse both work for the Company, you have an additional enrollment option:

- Each of you can enroll in the Voluntary Term Life Insurance, Voluntary Dependent Term Life Insurance, and Disability Insurance Plans. See the *Life Insurance* and *AD&D Insurance* chapters for more information. Requests for Voluntary Term Life and Disability, however, require a Statement of Health form, unless you enroll within your waiting period (U.S., except Hawaii – 90 days; Hawaii – 28 days). If the request is made during Annual Enrollment, coverage for this plan will be effective January 1 of the new plan year or the date the insurance company approves your request, whichever date is later. If the request is being made due to a change in status, coverage will be effective the date of the event or the date the insurance company approves your request, whichever is later.

### Declining Coverage

Participation in the Company benefit plans is voluntary. When you first become eligible for benefits, if you do not wish to enroll in coverage for yourself and/or your eligible family members (except STD and LTD and Hawaii medical Associate Only category), you do not have to do anything.

All newly eligible associates are automatically enrolled in the following plans:

| U.S., except Hawaii | • Short-term Disability (STD) |
| | • Long-term Disability (LTD) |
| Hawaii | • Medical ("Associate-Only" category) |
| | • Supplemental Short-term Disability (SSTD) |
| | • Long-term Disability (LTD) |

Coverage begins on the first day after the associate completes the waiting period (U.S., except Hawaii – on the 91st day; Hawaii – on the 29th day). Payroll deductions begin with the first paycheck after completing the waiting period.

If you do not want the coverage, you must opt out by accessing the *Your Benefits Resources* Web site or calling the Benefits Choice Center within 31 days of the date on your *Enrollment Worksheet*.

If you opt out of the plans, you may enroll in STD (SSTD in New York and Hawaii) and LTD during any rolling 12-month period, and a Statement of Health form is required. See *The Disability Plans (U.S., Except Hawaii), Providing a Statement of Health* in this Supplement.

Hawaii associates are automatically enrolled in the Hawaii Medical Plan PPO. Hawaii associates who do not want medical coverage must complete an HC-5 form and return the signed form to the Benefits Choice Center. This form verifies that you are exempt from enrolling in the Medical Plan. Associates who drop the coverage may re-enroll during Annual Enrollment.

### Late Enrollment

A Statement of Health form is required when electing Voluntary Term Life Insurance, Short-term (Supplemental Short-term in Hawaii) and Long-term Disability Insurance for the first time after your initial eligibility period and also when increasing coverage to a level more than 1 times pay during any subsequent 12-month period. Your coverage will start on the date the insurance company approves your request. For requests made in relation to a status change, coverage will start on the date the insurance company approves your request.

### Cost for Coverage

You are automatically covered and make no contributions for the cost of your Basic Term Life (if enrolled in the Medical Plan), Basic Dependent Term Life (if dependents are enrolled in a Medical Plan), and Basic Accidental Death and Dismemberment Insurance. The other benefit plans, including the Medical, Vision, Prescription Drug, Dental, Spending Accounts, Disability Insurance, Voluntary Term Life Insurance, Voluntary Dependent Term Life Insurance, and Voluntary Accidental Death and Dismemberment Insurance Plans, require contributions from you.

As a convenience to you, if you enroll in any of these plans, your contributions will be deducted from your paycheck. Refer to your personalized *2004 Enrollment Worksheet* mailed to your home for assistance in calculating the cost of each benefit.

## Life Events

As a full-time hourly associate, you can enroll or make changes to your STD and LTD, Voluntary Term Life, Voluntary Dependent Term Life and/or AD&D Insurance once any time during a rolling 12-month period.

## Change of Employment Status

- If you change from part-time to full-time status, you can add coverage for yourself, spouse, and/or children for the Medical, Dental, Vision, and Prescription Drug Plans as well as Voluntary Term Life, Dependent Term Life, and AD&D Insurance. You can also start contributions to the Spending Accounts.

- If you change from full-time to part-time status, your Medical, Dental, Vision, and Prescription Drug Plan coverage and Voluntary Term Life, Dependent Term Life, and AD&D Insurance are canceled. Your contributions to the Spending Accounts will be stopped. See the *2004 Part-Time Benefits Summary* for more information.

- If you change from hourly to salaried, you can add, increase, decrease, or drop Voluntary Term Life, Dependent Term Life, and AD&D Insurance coverage for yourself, spouse, and or children. You cannot make any changes to your Medical, Dental, Vision, or Prescription Drug coverage or your Spending Account contributions. See the *2004 Salaried Associates Benefits Summary* for more details.

In order to make any of the above-mentioned changes, you must notify the Benefits Choice Center within 31 days after the date of the employment status change or your eligibility date, whichever is later.

## Life Insurance

### Basic Term Life Insurance

#### Coverage for You

If you are enrolled in a Company Medical Plan, the Basic Term Life Insurance Plan covers you for $20,000 until age 70. After age 70, your Basic Term Life Insurance benefit will be reduced. See *Life Insurance* chapter for more details.

#### Coverage for Your Family

If both you and your spouse work for the Company and you cover your spouse as a dependent, your spouse will be covered for $2,000 of Dependent Term Life Insurance.

Each child enrolled in a Medical Plan will also be covered for $2,000 of Dependent Term Life Insurance. If you enroll individually, each of you will be covered for $20,000 of Basic Term Life Insurance.

### Living Benefit

You may be eligible for a living benefit of $10,000 to help with expenses incurred prior to death. See the *Life Insurance* chapter for more details.

### Voluntary Term Life Insurance

#### Coverage for You

You can buy from 1 times to 10 times your annual base pay (rounded to the next higher multiple of $1,000, if not already a multiple of $1,000), up to a maximum of $500,000. "Annual base pay" means your hourly base pay rate multiplied by 2,080 (40 hours per week times 52 weeks). Base pay does not include overtime, bonuses, premiums, incentive pay, or other forms of Home Depot pay. If you are a resident of Texas, your coverage is limited to the greater of 7 times your annual base pay or $250,000.

For example, if your base pay is $16,650, you can buy:

- $17,000 (1x your annual base pay)
- $34,000 (2x your annual base pay)
- $51,000 (3x your annual base pay)

continuing up to $170,000, which is 10 times your annual base pay.

## AD&D Insurance

### Basic AD&D Insurance

Under the Basic AD&D Plan, you automatically receive coverage equal to $20,000 from the Company.

## Associate-Only Voluntary AD&D Option

You can buy from 1 times to 10 times your annual base pay (rounded to the next higher multiple of $1,000, if not already a multiple of $1,000), up to a maximum of $500,000. "Annual base pay" means your hourly base pay rate multiplied by 2,080 (40 hours per week times 52 weeks). Annual base pay does not include overtime, bonuses, premiums, incentive pay, or other forms of Home Depot pay.

For example, if your base pay is $16,650, you can buy:

- $17,000 (1x your annual base pay);
- $34,000 (2x your annual base pay);
- $51,000 (3x your annual base pay);

continuing up to $170,000, which is 10 times your annual base pay.

# The Disability Plans (U.S., except Hawaii)

To help ensure your financial protection if you become disabled and are unable to work because of illness or injury, the Company offers you the Short-term Disability (STD) Insurance Plan and the Long-term Disability (LTD) Insurance Plan. Generally, you have the choice to purchase:

- short-term and long-term disability insurance
- short-term disability insurance only (not available to associates working in California, New Jersey, and Rhode Island)
- long-term disability only (for associates working in California, New Jersey, and Rhode Island only)

State disability plans automatically cover associates working in California, New Jersey, and Rhode Island. These associates are eligible to participate in the Long-term Disability Plan only. Associates working in New York are also covered under a state disability plan.

However, since New York's state disability plan has limited benefits, the Company allows New York associates to participate in the Short-term Disability Plan.

If you are eligible to participate in the Company's Short-term Disability Plan, you must participate in that plan in order to participate in the Long-term Disability Plan.

## Enrolling in the STD and LTD Plans

### If You Joined the Company Before January 1, 2001

You may enroll in STD and LTD during any rolling 12-month period beginning January 1, 2004, and a Statement of Health is required.

### If You Joined the Company on or After January 1, 2001

You are automatically enrolled in both disability plans after completing your 90th day of service as a full-time associate. Payroll deductions begin with your first paycheck after you complete your 90th day.

If you do not want the coverage, you must opt out through the *Your Benefits Resources* Web site or by calling the Benefits Choice Center. If you opt out of the plans, you may enroll in STD and LTD during any rolling 12-month period, and a Statement of Health is required.

## Providing a Statement of Health

You must submit a Statement of Health form if you want to enroll in the disability plans and:

- You started work before January 1, 2001, and you did not enroll in disability coverage during your initial enrollment period.
- You were hired on or after January 1, 2001, and you opted out of automatic enrollment.

The Statement of Health form is mailed to your home following enrollment. To approve your request for coverage, Metropolitan Life Insurance Company (MetLife), the plan's insurance company, may require a doctor's statement and/or a physical exam. You will be responsible for any related costs. You do not have disability coverage until MetLife receives your completed form and approves your Statement of Health form.

**205**

## Paying for Your Coverage

Since you pay the premium for short-term and long-term disability coverage, you do not have to pay federal and FICA taxes on the benefits you receive.

If, however, you are working in the state of New York and receive benefits under the state disability plan, taxes will be deducted for the portion of the state plan that is paid by the Company.

## How the Short-term Disability Plan Works

After 14 consecutive calendar days of an illness or injury during which you are unable to work, the Short-term Disability Plan will pay 66.67% of base pay for an approved period of disability, not to exceed 24 weeks.

"Base pay" means your regular hourly pay rate in effect as of the date of disability and does not include overtime, bonuses, premiums, incentive pay, or any other form of pay from the Company. These benefits are paid on a weekly basis, and you do not pay federal or FICA taxes on the benefits received (unless you are working in New York, see the next section for additional information).

### Qualifying for Benefits

You must be actively at work on the day your coverage begins. If you become disabled during the first 7 consecutive calendar days of coverage under the Short-term Disability Plan, you must have been actively working your normally scheduled hours during the 7 calendar days immediately before the disability occurred to qualify for benefits.

In addition, to qualify for short-term disability benefits you must meet all of the following requirements:

- the disability period must be expected to last more than 14 consecutive calendar days (if you work in the state of New York, you may qualify for disability benefits if the disability period is expected to last more than 7 calendar days);
- you must be under the care of a qualified doctor (qualified doctors include legally licensed physicians and practitioners who are not related to you and are performing services within the scope of their licenses);

- you must not be able to perform the duties of your regular job; and
- MetLife must receive certification accompanied by appropriate medical documentation of a disability from your attending doctor before benefits are considered for payment.

## How the Plan Pays Benefits

During the first 14 consecutive calendar days that you are disabled, you can use any sick or vacation days you have available to receive pay for normally scheduled hours. After the first 14 consecutive calendar days, if approved, you will receive 66.67% of your base pay for the period of short-term disability, not to exceed 24 weeks.

If you are receiving income from other sources, however, your short-term disability weekly benefit will be reduced by the amount of your "other income." See *Benefit Reductions* in this Supplement for examples of "other income." While an associate is receiving short-term disability benefits, the premiums required for short-term and long-term disability (if elected) are deducted from the short-term disability benefit.

### Recurring Disabilities

If you have been receiving disability benefits and return to work for less than 14 days, and go out on disability again for the same or related cause, the disability, if approved, is considered to be "recurring." In this case, the benefit continues through the balance of the 26-week period, from the original date of disability (the 14-day waiting period plus the approved period of disability of up to 24 weeks). You do not have to complete another 14-day waiting period.

If you have been receiving disability benefits and return to work for 14 days or more, and go out on disability again, regardless of the disability reason, a new 26-week period (the 14-day waiting period plus the approved period of disability up to 24 weeks) begins, if approved. You must satisfy the 14-day waiting period before the benefit payment would begin.

If you have been receiving disability benefits and return to work for at least 1 day, and become disabled due to a different or unrelated cause, the disability is considered to be different. If approved, a new 26-week period (the 14-day waiting period plus the approved period of disability up to 24 weeks) begins. You must satisfy the 14-day waiting period before the benefit payment can begin.

### Partial Disability

If you become partially disabled immediately following a period of disability in which you were fully disabled for at least the 14-day waiting period, the Short-term Disability Plan will continue to pay the weekly benefit for the remainder of the 24-week benefit payment period, provided you remain partially disabled.

The amount of the weekly benefit, when added to any compensation you may earn while partially disabled, cannot exceed 100% of your indexed basic weekly earnings.

Partial disability means that you:

- are under the regular care of a doctor;
- can perform at least one of the material duties of your job or any other job on a part-time or full-time basis; and
- are earning at least 20% less per week than your base pay prior to the injury or sickness due to that injury or sickness.

### How the Long-term Disability Plan Works

After 26 consecutive weeks of illness or injury, if the disability qualifies as total disability, is expected to continue, and benefits are approved, the Long-term Disability Plan will pay 60% of base pay (reduced by "other income") for the remainder of the disability, up to age 65. "Base pay" means your monthly rate of pay in effect as of the date of disability and does not include overtime, bonuses, premiums, incentive pay, or any other form of pay from the Company. Long-term disability benefits are paid on a semi-monthly basis.

Associates who become disabled before age 60, and up to age 62, will receive benefits to age 65 as shown in the following chart.

After age 62, associates will receive benefits for a limited time, as shown in the chart.

| Age When Disability Begins | Benefit Duration |
|---|---|
| Less than 60 | To age 65 |
| 60 | 60 months |
| 61 | 48 months |
| 62 | 42 months |
| 63 | 36 months |
| 64 | 30 months |
| 65 | 24 months |
| 66 | 21 months |
| 67 | 18 months |
| 68 | 15 months |
| 69 and over | 12 months |

### Exceptions

The maximum period of disability that the plan will consider for disabilities due to mental/nervous disorders, chronic fatigue syndrome and related disorders, alcohol, drug or substance abuse or dependency, and soft tissue disorders will be 24 months from the date the disability starts. The 24-month maximum period of disability includes the 6-month waiting period and 18 months of benefit.

The period of disability is not limited to 24 months for a disability resulting from schizophrenia, bipolar disorder, dementia, organic brain disease, seropositive arthritis, spinal tumors, vascular malformations, radiculopathies, myelopathies, traumatic spinal cord necrosis, or muscolopathies.

### Remember:

If you are not actively working on the day your coverage should begin, your coverage will be delayed until you return to work and complete your 90 days of full-time employment.

"Mental/nervous disorder" means a mental, nervous, or emotional disorder or disease of any type. "Soft tissue disorders" are conditions which include disorders of the spine or limbs and their surrounding muscles, tendons, ligaments, and other soft tissue (included are sprains and strains of joints and adjacent muscles).

Supplement

## Qualifying for Benefits

To qualify for long-term disability benefits, your disabling illness or injury must not be the result of a pre-existing condition that causes total disability in the first 12 months after your coverage starts. For purposes of this plan, a "pre-existing condition" is any injury, illness, or other incapacitating condition for which you received medical care or took prescribed drugs during the 90 days immediately before the effective date of your long-term disability coverage. The Long-term Disability Plan will not pay benefits for any total disability that begins in the first 12 months of coverage if it was caused by, was contributed to, or is a result of a pre-existing condition.

Disability means that, due to an injury or sickness, you:

- require the regular care of a qualified doctor; and
- are unable to perform each of the material duties of your regular job **or** any gainful occupation for which you are reasonably qualified, taking into account your education, training, and experience.

In addition, to qualify for long-term disability benefits:

- you must be unable to return to work after the initial 26-week period of disability
- you must continue to be under the care of a qualified doctor (qualified doctors include legally licensed physicians and practitioners who are not related to you and who are performing services within the scope of their licenses)
- you must not be able to engage in **any** type of work or service for pay
- MetLife must receive certification with accompanying medical documentation of a disability from your attending doctor before benefits are considered for payment

## How the Plan Pays Benefits

After 26 weeks of disability, if approved for long-term disability, you will receive 60% of your base pay for the remaining period of disability, up to the maximum benefit duration. The maximum monthly benefit is $5,000; the minimum monthly benefit is $50.

Your benefit will not change throughout your disability period. However, if you are receiving income from other sources, your long-term disability benefits will be reduced by the amount of your "other income." See **Benefit Reductions** in this Supplement for examples of "other income."

Associates who become disabled before age 60, and up to age 62, will receive benefits to age 65. After age 62, associates will receive benefits for a limited time. See the chart on the previous page.

While an associate is disabled and receiving long-term disability benefits, the premiums required for long-term disability are waived.

### Rehabilitative Work Programs and Partial Disability

If you can return to work on a limited basis through a rehabilitative work program, you may qualify for partial disability benefits. If you qualify for partial disability, your long-term disability benefits (as described previously) will not be reduced for a 24-month period. After 24 months, your benefit will be reduced by 50% of your rehabilitative employment earnings.

During any period of disability, your benefits received through the plan, plus any income you earn, cannot exceed 100% of your pre-disability base pay.

## Limited Interruption of the Waiting Period

During the 180-day waiting period for long-term disability, limited interruption of the waiting period is allowed for up to 30 days. Any day of active work in this time will not count toward satisfying the waiting period. This limited interruption will not apply if, while you are actively at work, you become eligible for any other group disability insurance.

**To file claims for short-term and/or long-term disability, call MetLife at (800) 638-9909.**

**California, Rhode Island, and New Jersey Associates:**
Call your state disability office directly to file a claim for short-term disability.

### Recurrent Disability

If after a period of long-term disability during which you received benefits under this plan, you resume your regular job on a full-time basis for less than 6 consecutive months, any recurrent disability will be part of the same initial period of disability. If you resume work for more than 6 months, any recurrent disability will be treated as a new period of disability and a new elimination period must be completed.

If you become eligible for coverage under any other group long-term disability policy, this recurrent disability provision will not apply.

### In the Event of Your Death

If you are receiving long-term disability benefit payments at the time of your death, these payments will stop immediately. The Long-term Disability Plan does not provide survivor benefits.

## What's Not Covered Under the Disability Plan

The Short-term and Long-term Disability Plans do not cover a disability caused by or resulting from:

- intentionally self-inflicted injuries or attempted suicide
- war, insurrection, rebellion, or active participation in a riot
- committing or attempting to commit a felony

## Benefit Reductions

The plan will reduce your short-term and long-term disability benefits to account for "other income" you receive while disabled. Other income includes benefits under the following:

- Workers' compensation law, occupational disease laws, or any similar state or federal law

- any compulsory disability benefits law or act
- any formal wage or salary payment plan of the Company
- disability or retirement benefits under the United States Social Security Act, the Railroad Retirement Act, the Canada Pension Plan, the Quebec Pension Plan, or any similar plan or act
- any dependent benefits to which you are entitled because of your disability
- benefits to which you are entitled through no-fault insurance laws
- any disability benefits for which you are eligible under any other company group or individual insurance plan, or any government retirement system as a result of your job

## Filing Claims for Benefits

To file a short-term or long-term disability claim:

- Call the MetLife claims office at (800) 638-9909, as soon as you know you will be unable to work more than 14 consecutive days (or 7 consecutive days for associates working in New York). MetLife will then forward any necessary forms to you and your doctor.
- If you do not submit a claim within 90 days after the end of the period for which STD benefits were payable, or within 90 days after the end of the 180-day waiting period for LTD, you will not be eligible for disability benefits.

## Additional Information for Filing Your Disability Claim

Contact MetLife at (800) 638-9909 to start the benefit determination process. Select option #1 to report a new claim.

You should have the following information ready when you report your absence:

- **Personal Information:** Name, address, telephone number, e-mail address, date of birth, and Social Security number
- **Job Information:** Store location, telephone number, occupation, work schedule, and supervisor's name/number

supplement

supplement

- **Injury/Illness Information:** How, when, and where the injury occurred, nature of the illness, and last day worked
- **Physician(s) Information:** Name(s), address(es), telephone number(s), fax number(s), and e-mail address(es). Information is needed for each treating physician.

### Social Security

You are required to show proof that you have applied for Social Security benefits within the first 3 months of receiving long-term disability benefits. If you cannot provide this information, your monthly benefit payments will be reduced by an estimated Social Security benefit amount.

### When to Report Your Absence

If you are out of work for more than 4 days and expect your disability to last more than 14 days, or if you **know in advance** that you will be out of work for more than 14 days due to an injury, illness, or pregnancy (i.e., a scheduled surgery), call MetLife at (800) 638-9909 immediately.

### How Your Claims Are Handled

A MetLife disability claims management unit will handle all STD and LTD claims for Home Depot associates.

Here is a quick summary of important numbers and addresses:

| To check the status of an existing claim | (800) 638-9909 |
|---|---|
| To send a fax to the claims unit | (866) 690-1264 |
| For mailing, send to | MetLife Disability P.O. Box 14590 Lexington, KY 40511-4590 |

### Appealing a Claim

If your claim is denied as described in *Plan Administration* in the *General Information* chapter of this book, you will receive a formal letter that states the reasons for the denial and outlines the process you must follow if you choose to appeal the denial.

To appeal, you must request a review of the claim in writing to:

Metropolitan Life Insurance Company
Group Claims Review
P.O. Box 14592
Lexington, KY 40511-4592

## The Disability Plans (Hawaii)

To help ensure your financial protection if you become disabled and are unable to work because of illness or injury, the Company offers you the Supplemental Short-term Disability (SSTD) Insurance Plan and the Long-term Disability (LTD) Insurance Plan.

Hawaii has a mandatory state disability plan that basically provides you with short-term disability benefits up to 58% of your pay for a maximum of 26 weeks. You will pay for this benefit through payroll taxes once you have met the eligibility requirements.

You have the choice to purchase:

- Supplemental Short-term Disability Insurance only
- Supplemental Short-term and Long-term Disability Insurance

If you are eligible to participate in the Company's Supplemental Short-term Disability Plan, you must participate in that plan in order to participate in the Long-term Disability Plan.

### Enrolling in the SSTD and LTD Plans

#### If You Joined the Company Before January 1, 2001

You may enroll in SSTD and LTD during any rolling 12-month period beginning January 1, 2004 and a Statement of Health is required.

supplement

### If You Joined the Company on or After January 1, 2001

You are automatically enrolled in both disability plans after completing your 28th day of service as a full-time associate. Payroll deductions begin with your first paycheck after you complete your 28th day.

If you do not want the coverage, you must opt out through the *Your Benefits Resources* Web site or by calling the Benefits Choice Center. If you opt out of the plans, you may enroll in SSTD and LTD during any rolling 12-month period and a Statement of Health is required.

## Providing a Statement of Health

You must submit a Statement of Health form if you want to enroll in the SSTD and LTD plans:

- You started work before January 1, 2001, and you did not enroll in disability coverage during your initial enrollment period; or
- You were hired on or after January 1, 2001, and you opted out of automatic enrollment.

The Statement of Health form is mailed to your home following enrollment. To approve your request for coverage, Metropolitan Life Insurance Company (MetLife), the plan's insurance company, may require a doctor's statement and/or a physical exam. You will be responsible for any related costs. You do not have SSTD and LTD coverage until MetLife approves your Statement of Health form.

## Paying for Your Coverage

Since you pay the premium for supplemental short-term and long-term disability coverage, you do not have to pay federal and FICA taxes on the benefits you receive. If, however, you receive benefits under Hawaii's state disability plan, taxes will be deducted for the portion of the state plan that is paid by the Company.

## How the Supplemental Short-term Disability Plan Works

Once you become disabled and meet the eligibility requirements, the state plan will begin to pay 58% of your pay up to $408 per week after a 7-day waiting period. After 14 consecutive calendar days of an illness or injury during which you are unable to work, the Home Depot Supplemental Short-term Disability Plan, in coordination with the state plan, will pay 66.67% of base pay for an approved period of disability, not to exceed 24 weeks.

"Base pay" means your regular hourly pay rate in effect as of the date of disability and does not include overtime, bonuses, premiums, incentive pay, or any other form of pay from the Company. These benefits are paid on a weekly basis, and you do not pay federal or FICA taxes on the benefits received.

### Qualifying for Benefits

You must be actively at work on the day your coverage begins. If you become disabled during the first 7 consecutive calendar days of coverage under the Home Depot Supplemental Short-term Disability Plan, you must have been actively working your normally scheduled hours during the 7 calendar days immediately before the disability occurred to qualify for benefits.

In addition, to qualify for supplemental short-term disability benefits, you must meet **all** of the following requirements:

- the disability period must be expected to last more than 14 consecutive calendar days;
- you must be under the care of a qualified doctor (qualified doctors include legally licensed physicians and practitioners who are not related to you and are performing services within the scope of their licenses);
- you must be unable to perform the duties of **your** regular job; and
- MetLife must receive certification accompanied by appropriate medical documentation of a disability from your attending doctor before benefits are considered for payment.

supplement

## How the Plan Pays Benefits

During the first 14 consecutive calendar days that you are unable to work, you can use any sick or vacation days you have available to receive pay for normally scheduled hours. After the first 14 consecutive calendar days, if approved, you will receive approximately 8.67% of your base pay through the Home Depot SSTD Plan for the short-term disability period – not to exceed 24 weeks. You will receive the state disability payment for up to 26 weeks.

If you are receiving income from other sources, however, your short-term disability weekly benefit will be reduced by the amount of your "other income." See *Benefit Reductions* in this Supplement for examples of "other income."

While an associate is receiving supplemental short-term disability benefits, the premiums required for supplemental short-term and long-term disability (if elected) coverage are deducted from the supplemental short-term disability benefit.

### Recurring Disabilities

If you have been receiving disability benefits and return to work for less than 14 days, and go out on disability again for the same or related cause, the disability, if approved, is considered to be "recurring."

In this case, the benefit continues through the balance of the 26-week period, from the original date of disability (the 14-day waiting period plus the approved period of disability of up to 24 weeks). You do not have to complete another 14-day waiting period.

If you have been receiving disability benefits and return to work for 14 days or more, and go out on disability again, regardless of the disability reason, a new 26-week period (the 14-day waiting period plus the approved period of disability up to 24 weeks) begins, if approved. You must satisfy the 14-day waiting period before the benefit payment would begin.

If you have been receiving disability benefits and return to work for at least 1 day, and become disabled due to a different or unrelated cause, the disability is considered to be different. If approved, a new 26-week period (the 14-day waiting period plus the approved period of disability up to 24 weeks) begins.

You must satisfy the 14-day waiting period before the benefit payment can begin.

### Partial Disability

If you become partially disabled immediately following a period of disability in which you were fully disabled for at least the 14-day waiting period, the Supplemental Short-term Disability Plan will continue to pay the weekly benefit for the remainder of the 24-week benefit payment period, provided you remain partially disabled.

The amount of the weekly benefit, when added to any compensation you may earn while partially disabled, cannot exceed 100% of your indexed basic weekly earnings.

Partial disability means that you:

- are under the regular care of a qualified doctor;
- can perform at least one of the material duties of your job or any other job on a part-time or full-time basis; and
- are earning at least 20% less per week than your base pay prior to the injury or sickness due to that injury or sickness.

## How the Long-term Disability Plan for Hawaii Works

The Long-term Disability Plan for Hawaii works exactly like the U.S. LTD Plan.

## Filing Claims for Benefits

To file a state short-term disability or Home Depot supplemental short-term disability claim:

- To receive state STD benefits, call the GAB office at (808) 548-0231, as soon as you know your disability is expected to last more than 7 consecutive days. To receive SSTD benefits, notify GAB as soon as you know your disability is expected to last more than 14 consecutive days.
- See your HRM or manager for Leave of Absence forms and information.

If you do not submit a claim within 90 days after the end of the period for which SSTD benefits were payable, or within 90 days after the end of the 180-day waiting period for LTD, you may not be eligible for disability benefits.

**212**

To file a long-term disability claim, Call the MetLife claims office at (800) 638-9909 as soon as you know your disability is expected to last more than 26 weeks. MetLife will then forward any necessary forms to you and your doctor.

## Additional Information for Filing Your Disability Claim

You should have the following information ready when you report your absence:

- **Personal Information:** Name, address, telephone number, e-mail address, date of birth, and Social Security number
- **Job Information:** Store location, telephone number, occupation, work schedule, and supervisor's name/number
- **Injury/Illness Information:** How, when, and where the injury occurred, nature of the illness, and last day worked
- **Physician(s) Information:** Name(s), address(es), telephone number(s), fax number(s), and e-mail address(es). Information is needed for each treating physician.

## When to Report Your Absence

If you are out of work for more than 4 days and expect your disability to last more than 7 consecutive days, or if you know in advance that you will be out of work due to an injury, illness, or pregnancy (i.e., a scheduled surgery), call GAB at (808) 548-0231 immediately.

## How Your Claims Are Handled

A MetLife disability claims management unit/GAB will handle all SSTD and LTD claims for Home Depot associates. Here is a quick summary of important numbers and addresses:

| To check the status of an existing LTD claim | (800) 638-9909 |
|---|---|
| To check the status of an existing Hawaii SSTD claim | (808) 548-0231 |
| To send a fax to the claims unit | (866) 690-1264 |
| For mailing, send to | MetLife Disability<br>P.O. Box 14590<br>Lexington, KY 41511-4590 |

## Appealing a Claim

If your claim is denied as described in **Plan Administration** in the **General Information** chapter of this book, you will receive a formal letter that states the reasons for the denial and outlines the process you must follow if you choose to appeal the denial.

To appeal, you must request a review of the claim in writing to:

Metropolitan Life Insurance Company
Group Claims Review
P.O. Box 14592
Lexington, KY 40511-4592

## Time-Off Benefits

### Sick/Personal Days

As a full-time hourly associate, you accumulate 4 hours of sick/personal time each month. Sick/personal time accumulates with your first day at the Company, but it is not available until after your first 90 days are completed. This chart illustrates how sick/personal time accumulates.

### Full-Time Hourly Associates

| After month. . | You have accumulated. . | So you can now use. |
|---|---|---|
| 1 | 4 hours | 0 hours |
| 2 | 8 hours | 0 hours |
| 3 | 12 hours | 12 hours |
| 4 | 16 hours | 16 hours |

After the last payroll period in October, all full-time hourly associates who have accumulated more than 48 hours will receive a "sick-pay bonus" in their paycheck. This bonus will be for the hours you have accumulated beyond 48 hours. To receive your sick-pay bonus, you must be employed on the date that the checks arrive in the store. Sick-pay bonus hours are paid at your effective hourly rate on the date the check is produced.

## Vacation

Vacation is paid at your hourly rate of pay at the time of your vacation.

supplement

## Holidays

If you are scheduled to work on a holiday, you must work your scheduled day before the holiday, on the holiday, and after the holiday (regardless of your shift) to receive holiday pay. Holiday pay is 8 hours for full-time associates. Holiday pay is not to be used in calculating overtime. You must have completed your first 90 days and be actively employed to be eligible for holiday pay.

If you wish to observe a holiday that is not observed by the Company, you must give a 2-week notice to your supervisor. You should then submit a completed

Time and Attendance Change Request form to use one of the following options:

- Available vacation time
- Available sick/personal time

## Jury Duty

The Company pays the difference between your "per diem" (an allowance paid by the court for daily expenses) as a juror and your normally scheduled work earnings. Pay is based on the number of hours you miss from work, less the per diem allowance.

Jury-duty pay is available to associates who have completed their first 90 days. In some states, this benefit is available from the first day of employment.

Full-time hourly associates are paid for up to 8 hours at their regular hourly rate.

## Bereavement Pay

Full-time associates receive up to 3 days off at a rate of up to 8 hours pay per day.

You must have completed your first 90 days and be scheduled to work the days you will be off. Submit an approved Time and Attendance Change Request form that indicates your relationship with the deceased.

## General Information

### Events Affecting Your Benefits Coverage

If you change from a salaried position to a full-time hourly position, you will be automatically enrolled in Short-term (Supplemental Short-term in Hawaii) and Long-term Disability Insurance. You will also be

automatically enrolled if you are newly hired into a full-time position.

If you do not want the coverage, you may drop the coverage by calling the Benefits Choice Center within 31 days of the date on your *Enrollment Worksheet*. Otherwise, payroll deductions will begin.

## Benefits Continuation While on Leave

Participation in the Short-term (Supplemental Short-term in Hawaii) and Long-term Disability Insurance Plans end at midnight of the day before the start of a leave and will resume the day you return to active status.

If your medical condition qualifies you for an approved disability under Short-term Disability (STD), or Supplemental Short-term Disability in Hawaii (SSTD), coverage will continue during your medical leave.

Premiums for STD/SSTD in Hawaii and Long-term Disability will be deducted from your STD/SSTD benefit check during your period of disability. See the *The Disability Plans (Hawaii)* in the Supplement for more details.

## FutureBuilder While on Leave of Absence

### Contributions

Contributions cannot be made while you are on any unpaid leave. However, if you receive supplemental pay during Military Leave, vacation pay, and/or sick/personal time-off pay while on any leave, contributions will be taken.

### Loan Repayments

If you are on an approved leave of absence, your loan payments will be suspended. The maximum period that payments will be suspended is 12 months, unless you are on Military Leave.

When you return from leave, interest that accrued while your payments were suspended will be added to your loan balance. Your payroll deductions and/or payments period will be adjusted for the payment of this additional amount.

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Hearings and Appeals
Suite 200
1033 University Place
Evanston, IL 60201

Date: MAY 2 3 2006

**FILED**

**MARCH 13, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Jeanne Redor
701 Brentwood Ct
Algonquin, IL 60102

**08 C 50039**

### NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

**This Decision is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255**. Please put the Social Security number shown above on any appeal you file.

**Time to File an Appeal**

See Next Page

EXHIBIT

B

Jeanne P Fedor (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)                                    Page 2 of 3

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

### Time to Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

### How an Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulation exists. Section 404.970 of the regulation lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

### If No Appeal and No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

Jeanne P Fedor (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)                                        Page 3 of 3

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (815)338-3751. Its address is Social Security Administration, 2450 Lake Shore Dr, Woodstock, IL 60098.

                                        Edward B. Pappert
                                        Administrative Law Judge


cc:     Kenji S. Zweygardt
        5700 Boradmoor St, Suite 310
        Mission, KS 66202

**SOCIAL SECURITY ADMINISTRATION**
Office of Hearings and Appeals

**ORDER**

| IN THE CASE OF | CLAIM FOR |
|---|---|

Jeanne P Fedor
(Claimant)

Period of Disability and Disability Insurance
Benefits

(Wage Earner)

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
(Social Security Number)

I approve the fee agreement between the claimant and her representative subject to the condition that the claim results in past-due benefits.

My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

**HOW TO ASK US TO REVIEW THE FEE AGREEMENT DETERMINATION**

You or your representative may ask us to review the determination on the fee agreement. If you decide to ask us for a review, write us within 15 days from the day you get this order. Tell us that you disagree and give your reasons.
Send your request to this address:

> Regional Chief Administrative Law Judge
> 200 W. Adams, Suite 2901
> Chicago, IL 60606

Your representative also has 15 days to write us if he or she does not agree with the determination on the fee agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

Edward B. Pappert
Administrative Law Judge

MAY 2 3 2006
Date

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings and Appeals

### DECISION

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Jeanne P Fedor | |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On November 3, 2003, the claimant protectively filed an application for a period of disability and disability insurance benefits, alleging disability beginning May 19, 2003. This claim was denied and is now before the undersigned Administrative Law Judge on a timely written request for hearing filed on October 8, 2004 (20 CFR 404.929 *et seq.*). The claimant appeared and testified at a hearing held on January 30, 2006, in Evanston, Illinois. Also present, but not testifying was the claimant's husband, James Fedor. The claimant is represented by Kenji S. Zweygardt, an attorney.

### ISSUES

The issue is whether the claimant is or has been disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2008. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, the undersigned finds that the claimant has been disabled from May 19, 2003 through the date of this decision. The undersigned also finds that the insured status requirements of the Social Security Act were met as of the date disability is established.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is

See Next Page

disabled (20 CFR 404.1520(a)).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)).  Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575).  If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience.  If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).  If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e)).  An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f)).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long

enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

1.   **The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.**

2.   **The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 404.1520(b) and 404.1571 *et seq.*).**

3.   **The claimant has the following severe impairments: chronic low back pain secondary to ruptured discs at L3-L4, and L4-L5, degenerative disc disease at L3 through S1, radiculopathy of the left lower extremity, status-post gastric bypass surgery in 2000 with panniculectomy, and a history of essential hypertension (20 CFR 404.1520(c)).**

The above impairments cause significant limitation in the claimant's ability to perform basic work activities.

The claimant's medical records show that the claimant has also complained of depression/ anxiety, for which the claimant has had no specific treatment. She has never been hospitalized for depression or anxiety and has never attended any counseling with a psychologist or psychiatrist. There is no record that such counseling has even been recommended by any of her treating doctors. Also, there is no evidence that any of the claimant's treating doctors has placed any limitations on the claimant's ability to perform any activity due to her mental or emotional problems. The claimant's alleged anxiety and depression are therefore non-severe impairments.

4.   **The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).**

See Next Page

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR § 404.1567 that involves no standing and/or walking for greater than two hours total in an eight-hour workday, no sitting in an upright position for more than 4 hours total in an eight-hour workday and for no longer than 30 minutes at one time, no lifting and/or carrying in excess of 10 pounds occasionally, and no more than occasional stooping, crouching, or crawling. The claimant is unable to complete a normal workday without unexpected or unscheduled breaks during which she is required to lie down for up to 30 minutes at one time.

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p and 96-6p.

The claimant testified at the hearing that she had been working at Home Depot as a décor associate when she injured her back lifting a rug. She had been working at Home Depot for five years when that happened, mostly in the phone center. Prior to that job she worked as a licensed thoroughbred horse trainer, and for Savings of America as a receptionist in the mortgage department. She was not able to perform any of her past work, even the receptionist job, because she could not sit for any length of time. She had graduated from high school, had a driver's license but did not drive often, and when she did drive it was normally for short distances, such as to the store and back.

She spent most of her time watching television, reading, and cleaning the house. She had to take breaks after 10 to 15 minutes of cleaning to rest. When she overdid things, she had back pain that radiated into her legs and sometimes had headaches. She also had numbness and weakness in her lower extremities. She was not very stable with walking. She had particular problems with her left leg. She was able to walk about a half a block and then had extreme pain. She had shooting pains every day. She could no longer walk her dog or ride horses. She could walk about a half a block. She was taking Vicodin and Soma every day for symptom relief. She had drowsiness from her medications. She lay down every day to help relieve her symptoms. Her doctors had recommended back surgery, which she had not had as of the date of the hearing. She was hoping to hold off on surgery for as long as she could in light of the many problems her husband had after undergoing two back surgeries. She had tried injections, which did not help. She also had physical therapy, which also had no positive effect on her symptoms. She has flare-ups of her back pain on occasion and when that happened, she had problems for a few days at a time. The primary problems that kept her from working were an inability to stand for any length of time, to walk, to sit, to move, or to bend.

She filed a worker's compensation claim and that was settled in May or June 2005 for a lump sum payment of $120,000 (net to her).

See Next Page

Jeanne P Fedor (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)                                    Page 5 of 7

The claimant's objective medical evidence establishes that the claimant hurt her back while she was working for Home Depot on May 18, 2003 when she tried to move a heavy object, and hurt her back (Exhibits 1F, pp. 9-11; 4F, p. 3; 5F, p. 1). She had x-rays and a magnetic resonance imaging (MRI) study of her lumbar spine on June 1 and 10, 2003 that showed disc bulging/protrusion in L3-L4 and L4-L5 with degenerative disc disease at L5-S1 (Exhibits 3F, p. 5; 7F, p. 3). She also had x-rays of her cervical spine on June 10, 2003 that showed degenerative disc disease at C4-C5, and C5-C6 (Exhibit 7F, p. 2). When she was seen by Roger Tolentino, M.D. on June 6, 2003 she rated her back pain as being a 9 or 10 on a ten-point scale. The doctor examined her and diagnosed her with disc herniation/protrusion at L3-L4 and L4-L5, lumbar radiculopathy, cervical radicular syndrome and possible carpal tunnel syndrome with disabling low back pain (Exhibit 1F, pp. 9-11). She was treated with epidural steroid injections from middle to late 2003 that provided no lasting relief from her symptoms. In fact, she reported that her symptoms were worse after the injections, particularly at the injection site (Exhibits 1F; 2F, p. 1; 4F, p. 6).

X-rays on March 30, 2004 and May 4, 2004 showed degenerative disc disease at L3-L4, L4-L5, and L5-S1 and left sacroiliac strain with pseudo sciatica (Exhibits 4F, p. 2; 5F, p. 8).

A consultative physical evaluation of the claimant done on March 30, 2004 by Ahmair M. Shaikh, M.D. At that time the claimant indicated that she was disabled by back pain, hypertension, and depression. She also indicated that she had been treated with injections and medication, but that her condition continued to worsen. She also indicated that she had a history of hypertension. She had depression since 2003. On physical examination the claimant had an abnormal gait, and could not bear weight on both legs. Strength was 3/5 in her lower extremities. She had reduced range of motion in her hips and low back. The doctor concluded that the claimant had low back pain secondary to ruptured discs at L3-L4, and L4-L5 with radiculopathy of the let lower extremity, and a history of hypertension (Exhibit 5F).

The claimant was taken by ambulance to Sherman Hospital in August 2004 with complaints of weakness, dizziness, and shaking. She was evaluated and diagnosed on that occasion with essential hypertension, obesity/status-post gastric bypass surgery, anxiety, depression, and chronic low back pain. She had a similar occurrence and treatment at Sherman Hospital in September 2004 (Exhibit 9F).

The claimant attended physical therapy sessions from January through March 2005 with no significant change in her symptoms after 12 sessions. In fact, the claimant felt that her symptoms were worse after that. She had pain in her low back, buttocks, and down her left leg into her calf region with weakness in her left leg. She had some pain relief with the use of a TENS unit (Exhibit 11F).

The claimant also has a history of obesity. She underwent gastric bypass surgery in 2000 and panniculectomy (Exhibit 12F). In August 2005 she was seen by Sharon C. Ollee, M.D. for preoperative surgical clearance for contouring of her legs and revision of panniculectomy (Exhibit 12F). Dr. Ollee had previously treated the claimant (when her primary care doctor, Marshall E. Pederson, M.D. (Exhibit 4F) left the practice of medicine in the area where the claimant reside) for chest pain in January 2001, that the doctor concluded was musculoskeletal in

See Next Page

Jeanne P Fedor (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)                                    Page 6 of 7

origin. She also diagnosed the claimant with chronic back pain and prescribed Soma for her (Exhibit 10F).

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are generally credible.

The State agency medical opinion is given reduced weight because other medical opinions are more consistent with the record as a whole and evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultant on April 16, 2004 (Exhibit 6F). Furthermore, the State agency consultant did not adequately consider the claimant's subjective complaints or the combined effect of the claimant's impairments.

The opinions and conclusions of the claimant's treating doctors, Dr. Pedersen and Dr. Ollee, are entitled to significant weight. Each had the opportunity to see and examine the claimant and to treat her for her various medical problems. Each was familiar with her medical history. Dr. Ollee had the opportunity to see and examine the claimant in August 2005 in preparation for her then upcoming surgery (Exhibit 12F). Their opinions are consistent with the claimant's longitudinal medical record. While Dr. Pedersen was of the opinion that the claimant was disabled from work secondary to back pain, Social Security Ruling 96-5p and 20 CFR § 404.1527(e) provide that the ultimate determination of "disability" under the Social Security Act is reserved to the Social Security Commissioner and her delegees, and opinions by other persons on such issues are not entitled to controlling weight.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

The claimant has past relevant work as a décor associate at home depot, which was medium, unskilled work, as a receptionist in a mortgage department, which was sedentary, unskilled work, and as a sales associate, which was light, unskilled to semi-skilled work (Exhibit 4E; 5E). Because the claimant is limited to doing a reduced range of sedentary work that significantly restricts her ability to sit, stand and/or walk, she is unable to perform any of her past relevant work.

7. The claimant was advanced age on the date disability is established (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

See Next Page

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

Here the claimant is incapable of performing full-time work activity on a regular and sustained basis. Even if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "disabled" would be directed by Medical-Vocational Rule 201.06. Because the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, a finding of "disabled" is appropriate under the framework of Medical-Vocational rule 201.06 and Social Security Ruling 96-8p.

The claimant testified that she previously received a worker's compensation settlement in the amount of $120,000 (net to her). The component of the social Security Administration responsible for effectuating this decision will notify the claimant of the effect, if any, of worker's compensation offset on Disability Insurance Benefits.

**11. The claimant has been under a "disability," as defined in the Social Security Act, from May 19, 2003 through the date of this decision (20 CFR 404.1520(g)).**

## DECISION

Based on the application for a period of disability and disability insurance benefits protectively filed on November 3, 2003, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on May 19, 2003.


Edward B. Pappert
Administrative Law Judge

MAY 2 3 2006
Date