# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# WESTERN DIVISION

| | |
|---|---|
| JEANNE FEDOR, | |
| Plaintiff, | |
| | Case No. 08 C 50039 |
| v. | |
| | The Hon. Judge Kapala |
| METROPOLITAN LIFE INSURANCE COMPANY and THE HOME DEPOT LONG TERM DISABILITY PLAN[1], | Magistrate Judge Mahoney |
| Defendants. | |

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, as a fiduciary of HOME DEPOT EMPLOYEE WELFARE BENEFITS PLAN | |
| Counter-Plaintiff, | Case No. 08 C 50039 |
| v. | The Hon. Judge Kapala |
| JEANNE FEDOR, | Magistrate Judge Mahoney |
| Counter-Defendants. | |

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
ANSWER TO PLAINTIFF'S COMPLAINT, ADDITIONAL DEFENSES AND
COUNTERCLAIM**

Defendant Metropolitan Life Insurance Company ("MetLife"), for its answer, affirmative defenses to the Complaint of Jeanne Fedor and Counterclaim, states as follows:

*Jurisdiction and Venue*

---

[1] Defendant/Counter-Plaintiff has been incorrectly sues as "The Home Depot Long Term Disability Plan." Defendant/Counter-Plaintiff's correct name is "Home Depot Employee Welfare Benefits Plan."

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan which, in this case, consists of a group long term disability insurance plan underwritten by Metropolitan Life Insurance Company, for the benefit of employees of The Home Depot.  In addition, this action may be brought before this court pursuant to 28 U.S.C. § 1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

**ANSWER:**    MetLife admits only that Plaintiff's Complaint is based upon ERISA,  that the employee welfare benefit plan at issue in this case is funded by a group insurance policy issued by MetLife to Home Depot U.S.A., Inc. ("Home Depot"), and that this Court has jurisdiction over the Complaint pursuant to 29 U.S.C. §§ 1132 (e)(1), 1132 (f) and 28 U.S.C. §1331.  MetLife denies the remaining allegations of Paragraph 1 of the Complaint.

2.     The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials, Those avenues of appeal have been exhausted.

**ANSWER:**    MetLife admits the allegations of Paragraph 2 of the Complaint.

3.     Venue is proper in the Northern District of Illinois. 29 U.S.C. §  1132(e)(2), 28 U.S.C. § 1391.

**ANSWER:**    MetLife admits the allegations of Paragraph 3 of the Complaint.

*Nature of Action*

4.     This is a claim seeking an award to plaintiff of disability benefits pursuant to the policy of insurance, Policy #90280 underwritten by Metropolitan Life Insurance Company to provide long term disability insurance benefits to employees of The Home Depot. (a true and correct copy of the summary plan description is attached hereto and by that reference incorporated herein as Exhibit "A"). This action, seeking recovery of benefits, is brought pursuant to § 502(a)(1)(B) of ERISA (29 U.S.C. § 1l32(a)(l)(B)).

**ANSWER:**    MetLife admits only that Plaintiff is seeking an award of disability benefits under The Home Depot Employee Welfare Benefit Plan (the "Plan") at issue in this case which is funded by a group insurance policy (policy number 90280-G) issued by MetLife to

Home Depot and that this action is brought pursuant to § 502(a)(1)(B) of ERISA (29 USC § 1132 (a)(1)(B)).  MetLife denies the remaining allegations of Paragraph 4 of the Complaint.

### *The Parties*

5. Jeanne Fedor ("Ms. Fedor") at all times relevant was a resident of Algonquin, Illinois, and the events, transactions, and occurrences relevant to Ms. Fedor's claim of disability took place within the Northern District of Illinois.  Ms. Fedor was born on July 13, 1948.

**ANSWER:** MetLife admits, on information and belief, that Jeanne Fedor was at all times relevant, a resident of Algonquin, Illinois and was born on July 13, 1948.  MetLife denies the remaining allegations of Paragraph 5 of the Complaint.

6. Metropolitan Life Insurance Company ("MetLife") is an insurer of short term and long term disability benefits.  At all times relevant hereto, MetLife was doing business throughout the United States and within the Northern District of Illinois.

**ANSWER:** MetLife admits the allegations of Paragraph 6 of the Complaint.

7. At all times relevant hereto, the Home Depot LTD plan ("Plan") constituted an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1); and incident to her employment, Ms. Fedor received coverage under the Plan as a "participant" as defined by 29 U.S.C. § 1002(7). This claim relates to benefits under the foregoing Plan.

**ANSWER:** MetLife admits the allegations of Paragraph 7 of the Complaint.

### *Statement of Facts*

8. Ms. Fedor was employed as a decor sales associate by The Home Depot, in Algonquin, Illinois.

**ANSWER:** MetLife admits the allegations of Paragraph 8 of the Complaint.

9. Ms. Fedor's last worked [sic]The Home Depot on May 18, 2003 when she injured her back lifting a rug. As a result of this accident, Ms. Fedor suffered from back and leg pain caused by lumbar radiculopathy, degenerative disc disease at L3 through S1, herniated discs at L.3-L4 and L4- L5 levels, and left sacroiliac strain with pseudo-sciatica.

**ANSWER:** MetLife admits that Ms. Fedor's last day worked at the Home Depot was May 18, 2003.  MetLife is without knowledge or information sufficient to form a belief as to the

169669                                              3

truth of the allegations that Ms. Fedor injured her back lifting a rug. MetLife denies the

remaining allegations of Paragraph 9 of the Complaint.

    10.    Unable to continue working in any occupation, Ms. Fedor applied for long term disability benefits through MetLife on January 8, 2004.

    **ANSWER:**    MetLife admits that Ms. Fedor applied for long term disability benefits on January 8, 2004. MetLife denies the remaining allegations of Paragraph 10 of the Complaint.

    11.    The Plan defines disability as:
Disability means that, due to an injury or sickness, you 1) require the regular care of a doctor; and 2) are unable to perform each of the material duties of your regular job or any gainful occupation for which you are reasonably qualified, taking into account your education, training and experience.

In addition, to qualify for long-term disability benefits:

- You must be unable to work after the initial 26-week period of disability
- You must continue to be under the care of a qualified doctor (qualified doctors include legally licensed physicians and practitioners who are not related to you and who are performing services within the scope of their licenses)
- You must not be able to engage in any type of work or service for pay
- MetLife must receive certification with accompanying medical documentation of a disability from your attending doctor before benefits are considered for payment

The maximum period of disability that the Plan will consider for disabilities due to mental/nervous disorders; chronic fatigue syndrome and related disorders; alcohol, drug or substance abuse or dependency; and soft tissue disorders will be 24 months from the date the disability starts. The 24 months maximum period of disability includes the six months waiting period and 18 months of benefits.

The period of disability is not limited to 24 months for a disability resulting from schizophrenia, bipolar disorder, dementia, organic brain disease, seropositive arthritis, spinal tumors, malignancy, vascular malformations, radiculopathies, myelopathies, traumatic spinal cord necrosis, or muscolopathies. Mental/nervous disorder means a mental, nervous, or emotional disorder or disease of any type. Soft tissue disorders are conditions which include disorders of the spine or limbs and their surrounding muscles, tendons, ligaments, and other soft tissue (included are sprains and strains of joints and adjacent muscles).

(Exhibit A — Summary Plan Description, pg. 207).

    **ANSWER:**    MetLife denies the allegations of Paragraph 11 of the Complaint.

169669    4

      12.    Ms. Fedor supported her claim for benefits with numerous medical records, reports and evaluations. After reviewing this documentation, on January 21, 2004, MetLife approved Ms. Fedor's claim for disability retroactive to May 19, 2003.

      **ANSWER:**    MetLife admits only that Ms. Fedor submitted medical documentation in connection with her claim for benefits and that on January 21, 2004, MetLife completed its review of Ms. Fedor's claim and determined that the information submitted substantiated her claim, effective November 17, 2003.  MetLife denies the remaining allegations of Paragraph 12 of the Complaint.

      13.    Ms. Fedor received uninterrupted disability payments in the amount of $534. 10 two times per month from November 17, 2003 through June 30, 2006.

      **ANSWER:**    MetLife denies the allegations of Paragraph 13.

      14.    On May 23, 2006, the Social Security Administration issued a determination that Ms. Fedor because of her numerous back impairments, including radiculopathy, that Ms. Fedor [sic] was disabled as of May 19, 2005, thus signifying her inability to engage in "any substantial gainful activity." (Definition of "disabled" under Social Security Act)(a true and correct copy of the Social Security decision is attached hereto and by reference incorporated herein as Exhibit "B").

      **ANSWER:**    MetLife admits only that on May 23, 2006, the Social Security Administration issued a fully favorable decision on Ms. Fedor's claim for Social Security Disability Insurance Benefits and that the Social Security Administration decision states that Ms. Fedor was "under a 'disability', as defined in the Social Security Act, from May 19, 2003 through the date of this decision."  MetLife denies the remaining allegations of Paragraph 14.

      15.    Nonetheless, without any change in her diagnosis or condition, MetLife terminated Ms. Fedor's benefits starting June 30, 2006, claiming that her impairments stemmed from neuromusculosketal and soft tissue disorders and, therefore, the maximum amount of benefits that she could receive was 24 months.

      **ANSWER:**    MetLife admits only that MetLife declined to continue Ms. Fedor's benefits under the Plan beyond June 30, 2006 because her diagnosis falls under the "soft tissue

disorders" 24 month limitation for disability. MetLife denies the remaining allegations of Paragraph 15 of the Complaint.

16. After MetLife ceased paying benefits, Ms. Fedor submitted an appeal on June 30, 2006 in accordance with 29 U.S.C. § 1133. On July 26, 2006, Ms. Fedor provided MetLife with updated medical evidence demonstrating the presence of a radiculopathy.

**ANSWER:** MetLife admits only that Ms. Fedor appealed MetLife's June 30, 2006 decision in accordance with 29 USC § 1133 and that on July 26, 2006, Ms. Fedor provided MetLife with updated medical documentation. MetLife denies the remaining allegation of Paragraph 17 of the Complaint.

17. Notwithstanding the presentation of overwhelming evidence showing Ms. Fedor continued to be disabled under the plan, on August 25, 2006, MetLife unreasonably refused to reconsider its decision.

**ANSWER:** MetLife denies the allegations of Paragraph 17 of the Complaint.

18. All avenues of administrative appeal have now been exhausted. Therefore, all efforts at administrative review or appeal have been exhausted and this matter is ripe for judicial review.

**ANSWER:** MetLife admits the allegations of Paragraph 18 of the Complaint.

19. The evidence submitted to MetLife entitles Ms. Fedor to payment of long term disability benefits under the terms and conditions of the Plan as she continues to meet the definition of disability under the plan.

**ANSWER:** MetLife denies the allegations of Paragraph 19 of the Complaint.

20. The determination by the Plan that Ms. Fedor does not suffer from a radiculopathy is contrary to the medical records and has no rational support in the evidence.

**ANSWER:** MetLife denies the allegations of Paragraph 20 of the Complaint.

21. As a direct and proximate result thereof, based on the evidence submitted to MetLife, establishing that Ms. Fedor has met the Plan definition of "disability" continuously since the onset of her disability, and that she continues to meet the definition, Ms. Fedor is entitled to payment of monthly disability insurance payments plus interest on all overdue payments at the rate of 9% in accordance with 215 ILCS 5/357.9 or 357.9a.

**ANSWER:** MetLife denies the allegations of Paragraph 21 of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's remedies for any alleged act or omission are limited solely to those offered by ERISA, as Plaintiff's claims arise under the Plan.

### Second Affirmative Defense

The Plan expressly grants the Plan's administrator and fiduciaries, including MetLife, discretionary authority to interpret the terms of the Plan and to determine eligibility for Plan benefits. Any interpretation or determination made pursuant to such discretionary authority must be given full force and effect unless it can be shown that the interpretation or determination was arbitrary and capricious. Because all determinations made with respect to Ms. Fedor's claim for disability benefits under the plan were reasonable and not arbitrary and capricious, the termination of Plaintiff's benefits under the Plan must be upheld.

### Third Affirmative Defense

Plaintiff is not entitled to an award of future benefits under the Plan.

### Fourth Affirmative Defense

Plaintiff is not entitled to recovery because her diagnosis falls under the "soft tissue disorders" 24 month limitation for disability benefits.

### Fifth Affirmative Defense

Plaintiff is not entitled to recovery because Plaintiff failed to submit objective evidence of radiculopathy as required under the Plan in order to establish that her diagnosis falls under an exception to the "soft tissue disorders" 24 month limitation for disability benefits.

**Sixth Affirmative Defense**

MetLife asserts that, to the extent Plaintiff is entitled to benefits, which MetLife denies, MetLife is entitled to an offset for any additional other income benefits that should be taken into account in calculating her long-term disability benefits, including but not limited to, any benefit she has received from the Social Security Administration and Worker's Compensation.

**Seventh Affirmative Defense**

MetLife discharged its duties with respect to the Plan in the sole interest of all the Plan participants and their beneficiaries and, in doing so, MetLife has acted in accordance with the terms of the Plan.

**Eighth Affirmative Defense**

To the extent (and without admitting that) Ms. Fedor was entitled to continuing benefits as of the date MetLife determined she was not entitled to benefits, such entitlement does not mean that the plaintiff has an entitlement to unlimited future benefits after that date given, *inter alia*, the possibility for future recovery from any disabling conditions (the existence of which is denied), as well as the effect of different Plan requirements, exclusions and/or limitations.

**Ninth Affirmative Defense**

MetLife reserves the right to add any additional defenses discovered in the course of this litigation.

## COUNTERCLAIM

Defendant/Counter-Plaintiff Metropolitan Life Insurance Company as a fiduciary of the Home Depot Employee Welfare Benefits Plan, for its Counterclaim against Plaintiff/Counter-Defendant Jeanne Fedor, alleges as follows:

## THE PARTIES

1. Metropolitan Life Insurance Company ("MetLife") is a fiduciary of the Home Depot Welfare Benefits Plan ("Plan"), an "employee welfare benefit plan" within the meaning of and governed by the Employee Retirement income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1101 *et seq.*

2. Upon information and belief, Jeanne Fedor ("Fedor") is a resident of Algonquin, Illinois.

## JURISDICTION

3. This Court has original jurisdiction of this action pursuant to 29 U.S.C. §1132(f), 28 U.S.C. §1331 and 29 U.S.C. § 1132(c) in that it is a compulsory counterclaim pursuant to 29 U.S.C. § 1132(a)(3) to recover an overpayment of disability benefits under the Plan.

4. Alternatively, to the extent that ERISA does not govern this Counterclaim, the Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that this is a compulsory counterclaim for unjust enrichment to recover excess Plan benefits paid to Fedor.

5. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because Fedor resides in the district.

## NATURE OF THE ACTION

6.　　This counterclaim is brought by MetLife, the fiduciary of the Plan, to obtain equitable relief to enforce the terms of the Plan. Specifically, MetLife seeks, pursuant to 29 U.S.C. 1132(a)(3) a constructive trust on funds in Fedor's possession that are the result of an overpayment of long-term disability benefits by MetLife. Alternatively, MetLife seeks a constructive trust on funds in Plaintiff's possession pursuant to federal common law of ERISA.

## THE FACTS

7.　　Upon information and belief, Fedor is a former employee of Home Depot U.S.A., Inc. and was, at certain times, a participant in the Plan.

8.　　The Plan provides short-term disability benefits ("STD") and long-term disability benefits ("LTD") for participants who meet the requirements set forth in the Plan for those benefits.

9.　　Fedor signed a Reimbursement Agreement on January 8, 2004, wherein she agreed *inter alia* to reimburse "MetLife in a single lump sum any overpayment on [her] Long Term Disability claim due to integration of retroactive Social Security Benefits."

10.　　On or around September 26, 2003, MetLife, as claims administrator for the Plan, approved Fedor's claim for STD under the Plan effective June 2, 2003.

11.　　MetLife paid Fedor STD under the Plan for the period June 2, 2003 through November 16, 2003 totaling $7,264.32.

12.　　On January 21, 2004, MetLife, as claims administrator for the Plan, approved Fedor's LTD claim under the Plan effective May 19, 2003.

13.　　MetLife paid Fedor LTD under the Plan for the period November 17, 2003 through June 30, 2006 totaling $35,796.85.

14.     On May 23, 2006 the Social Security Administration issued a fully favorable determination retroactively awarding Fedor Social Security Disability Insurance Benefits ("SSDI") effective November 1, 2003 in the amount of $441 per month.  The SSDI monthly payment increased to $455 per month effective January 1, 2004.

15.     Under the terms of the Plan, the Plan may reduce STD and LTD benefits to account for "other income" received by a participant while disabled, including disability benefits under the United States Social Security Act.

16.     The SSDI award to Fedor created an overpayment of STD and LTD benefits of $10,848.51.  ("STD and LTD Overpayment").  The STD and LTD Overpayment was calculated by taking the $43,061.17 Fedor actually received under the Plan between June 2, 2003 and November 16, 2003 for STD and November 17, 2003 through June 30, 2006 for LTD and subtracting the $25,726.24 Fedor should have received for that period, the $2,805.51 refunded by Fedor in connection with an unrelated Worker's Compensation overpayment and the $3,681.37 Social Security attorneys fee award.

17.     On July 7, 2006, MetLife requested that Fedor return the STD and LTD Overpayment.

18.     Fedor has not reimbursed the Plan for any part of the STD and LTD Overpayment.

## COUNT I
## EQUITABLE RELIEF

19.     Counter-Plaintiff incorporates herein by reference the allegations in Paragraphs 1 through 17 of the Counterclaim and agreed to repay.

20. Fedor received $10,848.05 in STD and LTD benefits to which she was not entitled under the terms of the Plan.

21. Fedor has been unjustly enriched by retention of the STD and LTD Overpayment.

22. A constructive trust should be imposed on the STD and LTD Overpayment which is in Fedor's possession and rightfully belongs to the Plan.

23. Pursuant to 29 U.S.C. § 1132(a)(3), MetLife, as the Plan's fiduciary, is entitled to recover the STD and LTD Overpayment plus applicable interest.

## COUNT II
## UNJUST ENRICHMENT

24. Counter-Plaintiff incorporates by reference herein the allegations in Paragraphs 1 through 23 of the Counterclaim.

25. Fedor received and retains the STD and LTD Overpayment to which she was not entitled and which she agreed to repay.

26. Fedor has been unjustly enriched by her retention of the STD and LTD Overpayment.

27. It would be inequitable for Fedor to retain the STD and LTD Overpayment.

28. The Plan has no adequate remedy at law.

29. MetLife, as the fiduciary of the Plan, is entitled to recover from Fedor the STD and LTD overpayment plus applicable interest.

WHEREFORE, Defendant/Counter-Plaintiff Metropolitan Life Insurance Company, as fiduciary of the Home Depot Employee Welfare Benefits Plan demands judgment on its

Counterclaim against Jeanne Fedor in the amount of $10,848.05, plus applicable interest, as well as its attorneys' fees and costs of this action.

        Respectfully submitted,

        METROPOLITAN LIFE INSURANCE COMPANY and METROPOLITAN LIFE INSURANCE COMPANY, a fiduciary of the HOME DEPOT LONG TERM DISABILITY PLAN

        By: __/s/ Natalie A. Harris_____
              One of Its Attorneys

Steven P. Mandell *(ARDC #6183729)*
Brendan J. Healey *(ARDC #6243091)*
Natalie A. Harris *(ARDC #6272361)*
**Mandell Menkes LLC**
333 W. Wacker Drive, Ste. 300
Chicago, IL  60606
Tel:  (312) 251-1000

**CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that I caused the foregoing ***METROPOLITAN LIFE INSURANCE COMPANY'S ANSWER TO PLAINTIFF JEANNE FEDOR'S COMPLAINT, AFFIRMATIVE DEFENSES AND COUNTERCLAIM***, to be served on:

        David A. Bryant
        Daley, DeBofsky & Bryant
        1 North LaSalle Street, Ste. 3800
        Chicago, IL  60602

by ECF on this 6th day of  June, 2008.